

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Judson T. Mihok
Assistant United States Attorney
Judson.Mihok@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4903
MAIN: 410-209-4800
FAX: 410-962-0716

May 9, 2014



Joseph Balter, Esq.
Office of the Federal Public Defender
For the District of Maryland
100 South Charles Street
Tower II, Suite 1100
Baltimore, MD 21201

Re:   United States v. Travis Lamont Foote, aka "Cash" Crim. No. JKB 14-0015

Dear Mr. Balter:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by May 23, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.   The Defendant agrees to plead guilty to Count Five of the Indictment now pending against him, which charges him Conspiracy to Commit Sex Trafficking by Force, Fraud and Coercion, in violation of 18 U.S.C. § 1594(c). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offenses

2.   The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Conspiracy to Commit Sex Trafficking by Force, Fraud and Coercion:

   a.   First, that there was an agreement among two or more people to commit sex trafficking by force, fraud or coercion, as charged in the Indictment; and

   b.   Second, that the defendant knowingly and willfully became a member of that conspiracy.

## Penalties

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: life in prison, a fine of $250,000 and five years of supervised release. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

4.      The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he may be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250. See, 42 U.S.C. §§ 16911(5)(A)(iii), (v).

## Waiver of Rights

5.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

      a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

      b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

  d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

  e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status or the right to own or possess a firearm.

### Advisory Sentencing Guidelines Apply

6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant understand, agree and stipulate to the Statement of Facts attached as Exhibit A which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

  a. The base offense level is 34. USSG §2G1.1(a)(1).

8. This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to USSG §3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for

3

acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

9. Thus, the final adjusted offense level for Count One is **31** (after acceptance of responsibility).

10. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

11. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

12. At the time of sentencing, both parties agree to jointly recommend a sentence of 144 months, or 12 years, in the custody of the Bureau of Prisons, as well as a period of 5 years of supervised release.

## Obligations of the United States Attorney's Office

13. As stated supra at paragraph 12, at the time of sentencing, this Office will recommend a sentence of 12 years in the custody of the Bureau of Prisons, to be followed by a 5 year term of supervised release. At the time of sentencing, this Office will move to dismiss the remaining open counts against the Defendant.

14. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Second Superseding Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

15. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives his rights, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any

issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the advisory USSG range at an adjusted offense level of 31, taking into consideration his Criminal History Category as determined by the Court; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below what is outlined supra at ¶¶ 12 and 13.

  c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

  d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

16. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under USSG §3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Restitution

17. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all

reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Forfeiture

18. The Defendant agrees to forfeit all right, title and interest in: any property, real or personal, used or intended to be used to commit or to facilitate the commission of any violation of this chapter; and any property, real or personal, which constitutes or is derived from proceeds traceable to any violation of this chapter. 18 U.S.C. § 1594(e). The provisions of chapter 46 of this title relating to civil forfeitures shall extend to any seizure or civil forfeiture under this subsection.

### Court Not a Party

19. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office=s recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

20. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Judson T. Mihok
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7-17-2014                                    Travis Foote
Date                                         Travis Lamont Foote

I am Travis Lamont Foote's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

7-17-2014                                    _____
Date                                         Joseph Balter

7

# EXHIBIT A
## STIPULATED FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Travis Lamont Foote, a/k/a "Cash," is 31 years old and was a resident of Baltimore, Maryland.

In September 2012 Jane Doe 1, an 18 year old female, was living in Florida and had dropped out of high school, and was trying to get back into high school or find employment. While on the social media site known as Facebook, Jane Doe 1 was contacted by an individual purporting to be a female using the name "Cash Treasure" or something similar. "Cash Treasure" is in fact the Defendant's on-line identity that he had created. Utilizing the "Cash Treasure" female persona, the Defendant told Jane Doe 1 that "she" knew someone who would be able to assist Jane Doe 1, and thereafter reached out to Jane Doe 1 as a friend of "Cash Treasure" who could help her get back into high school and get a diploma, but that it would require Jane Doe 1 to move to Baltimore. After Jane Doe 1 agreed, the Defendant paid for an airline ticket for Jane Doe 1 to fly from Florida to Baltimore sometime in September 2012.

After Jane Doe 1 arrived at BWI Airport she met with the Defendant who drove her to the Ramada Inn on Baltimore National Pike in Catonsville, Maryland. Upon arrival Jane Doe 1 learned that there were four rooms rented to the Defendant and three were occupied by other females. It was shortly thereafter that Jane Doe 1 learned that the Defendant was running a prostitution business, which the Defendant described as an adult escort business called "Premiere Pleasures," where females were paid for spending time with men, such as going on dinner dates, and occasionally having sex with the men, but in reality, it was a prostitution business where the men were paying for sex with the females who were working for the Defendant. The Defendant told Jane Doe 1 that he expected her to work for him, that is engage in sex with men for money for the Defendant's benefit. At first Jane Doe 1 refused, but eventually, she agreed and began having sex with men for money, with all of the proceeds going to the Defendant.

During this time frame from in or around September 2012 through November of 2012, the Defendant was utilizing social media sites to persuade and entice females to work for him by engaging in commercial sex acts for his personal benefit. The Defendant also utilized websites, like "Backpage," to advertise these females as available to engage in commercial sex acts. Specifically, the Defendant was advertising and making two females who were using the names "Malaysia" and "Mercedez",[1] available for sex for money while utilizing a street or pimp name of "Cash."

---

[1] "Mercedez" is identified as Jane Doe 1 in the indictment.

On November 14, 2012 the BCPD Vice Unit discovered the same "Malaysia" and "Mercedez" postings on the website Backpage.com utilizing the phone number of XXX-XXX-6662. The Defendant used his email address, castro41030@gmail.com, when posting this Backpage.com advertisement. A BCPD Detective made an undercover call to the phone number to schedule a "date" with "Malaysia" and was directed to the Red Roof Inn at 111 West Timonium Road. The undercover Detective was told to call her back when he was in the parking lot, and when he did, she instructed him to come to Room 319 at the back of the hotel. After he entered the room, the undercover Detective agreed to exchange $180 for sex with "Malaysia"; at this time other detectives entered the room and placed her under arrest. Jane Doe 1 was located in the hallway of the Red Roof Inn holding a baby monitor, which was receiving a live video of the interior of Room 319, where police had conducted the undercover operation. The Defendant was also in the immediate area and quickly identified as being with both females. The BCPD detectives attempted to arrest the Defendant, but he struggled and ran away from the officers.

Prior to May of 2013, the Defendant and another individual had at least three females working for them, that is, women the Defendant was advertising on the internet who would engage in sex with men for money, all of which would be paid to him. On May 16, 2013 at approximately 0235 hours, a BCPD patrol officer conducted a vehicle stop on a silver Dodge Durango being operated by another individual due to the fact that the vehicle was speeding at 57mph in a 30mph zone. The Defendant was a passenger, along with an 18 year old female, identified in the Indictment as Jane Doe 2. From the vehicle, Officers located a plastic bag containing 16 smaller bags of a white rock substance, which was identified as crack cocaine, and the driver was charged with possessing those drugs. Records checks also listed Jane Doe 2 as a possible run-away. The Defendant and the driver were on their way back to the Ramada Inn after taking Jane Doe 2 on an "out-call," that is driving her to a location to meet with a man who paid money to have sex with her. Two additional females who were working as prostitutes for the Defendant and the driver were located in the two rooms. All three females indicated that they were advertised for prostitution on Backpage.com and that they give their earnings to the Defendant, the driver, and another person.

Jane Doe 2 began working as a prostitute for the Defendant in April of 2013. The Defendant took pictures of Jane Doe 2 and posted those pictures with advertisements on Backpage.com for the purpose of engaging in sex with Jane Doe 2 for money. Jane Doe 2 had approximately 100 "dates," that is meetings with men for money that was provided to the Defendant. In May of 2013, one of those calls to engage in sex with Jane Doe 2 involved a request from a man who wanted to urinate on Jane Doe 2. When Jane Doe 2 refused and attempted to leave the Red Carpet Inn on Reisterstown Road, the Defendant pursued her into the hallway and stairwell and engaged in a physical altercation with Jane Doe 2, and then physically bringing her back to the hotel room. Thereafter, Jane Doe 2 continued to engage in sex acts with men for money, which was provided to the Defendant, up until May 16, 2013, when the Defendant was arrested.

By virtue of the posting of the advertisements regarding the prostitutes on the internet, the travel of Jane Doe 1 across state lines, the use of cellular telephones to arrange encounters with men for the purpose of engaging in sex for money, and lodging at various hotels, the human trafficking conspiracy that the Defendant was a member of affected interstate commerce.

2

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

7-17-2014
Date

Travis Lamont Foote

3